Thomas S. CAFFERTY, Appellant,

v.

GARCIA'S OF SCOTTSDALE,
INC., Respondent.

No. C3–85–822.

Court of Appeals of Minnesota.

Oct. 22, 1985.

Joseph H. Belzer, Minneapolis, for appellant.

Barbara A. Leininger, Krause & Rollins, Minneapolis, for respondent.

Heard, considered and decided by HUSPENI, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

HUSPENI, Judge.

Thomas Cafferty appeals from an order denying him a new trial on his claim for intentional infliction of emotional distress. He asserts that the trial judge erroneously applied the law of intentional infliction of emotional distress, that the special interrogatories submitted to the jury elicited inconsistent answers, and that the jury found all the elements of the tort, but the trial judge wrongly refused recovery. We affirm.

## FACTS

Cafferty was hired by respondent Garcia's of Scottsdale (Garcia's) as a "manager-trainee" on July 6, 1982. After completing Garcia's training program on or about October 1, 1982, Cafferty became a floor manager at Garcia's St. Louis Park restaurant.

On October 24, 1982, a theft occurred at Garcia's. On that day, Cafferty had removed the cash receipts from the safe in the office and begun to prepare the reconciliation statements. After trying to reconcile the receipts for some time, Cafferty left the office to perform some other duties. The cash he was counting was not returned to the safe. Cafferty kept it on top of his desk in the locked office. When he returned, the money was gone. The police investigated the matter, but the cash was never recovered.

Cafferty was concerned that he would be blamed for the theft. He met with his supervisor, Dave Strock, who told him that Garcia's did not believe that he took the money. Cafferty often inquired as to the status of the investigation and was told not to worry about it.

On November 4, 1982, Cafferty came to work early. Strock had been informed that Cafferty would be coming in early. When Cafferty arrived at work, he walked to the desk normally used by him. On the desk he observed a handwritten memo from Strock to Garcia's regional manager recommending Cafferty's discharge from Garcia's. (Strock had been using that desk that afternoon and had walked out for a few minutes prior to Cafferty's arrival.) This was the first indication Cafferty had

that he was being terminated. The memo cited Cafferty's bad judgment in leaving the money out and poor skills in managing people as reasons for the dismissal.

Strock returned to the room three to five minutes after Cafferty had read the memo. Cafferty immediately confronted Strock. Strock told the bookkeeper to leave the office and requested the regional manager to come into the office. Cafferty was then told by the two supervisors that he was being terminated for the reasons given in the memo, effective immediately.

Following his termination, Cafferty experienced enduring feelings of fear and depression. He began to drink heavily, and suffered flashbacks of his war experience as a helicopter pilot in Vietnam. There was testimony that he spent a good deal of time just sitting staring into space and watching television. He did not converse with others, but generally remained silent and withdrawn.

In August 1983, Cafferty was diagnosed by the VA hospital as suffering from post-traumatic stress disorder-delayed (PTSD). PTSD involves psychological problems which evolve from extreme traumatic situations, such as war experiences.

At trial, Cafferty's VA counselor (who testified as an expert on PTSD) stated that Cafferty suffered from the disorder as a result of his experiences in Vietnam, and that the nature of the discharge from Garcia's triggered the outbreak of Cafferty's symptoms.

The trial court submitted the case to the jury in a special verdict form. The jury returned its answers and the trial court ruled that liability had not been found.

The relevant special interrogatories and answers were as follows:

1) Was the totality of the conduct of the defendant extreme and outrageous?
Yes _X_ No ___

2) If "Yes" to Question No. 1, do you find that Garcia's intentionally or recklessly inflicted severe emotional distress to Thomas Cafferty?
Yes _X_ No ___

3) If "Yes" to Question No. 2, do you find that the conduct of Garcia's caused Thomas Cafferty emotional distress?
Yes _X_ No ___

4) If "Yes" to Question No. 3, do you find that Thomas Cafferty's emotional distress was solely a result of a particular susceptibility?
Yes _X_ No ___

4(a) If "Yes" to Question No. 4, was defendant aware of the particular susceptibility of Thomas Cafferty?
Yes ___ No _X_

5) If "Yes" or "No" to Question No. 4, was the emotional distress inflicted on Thomas Cafferty by Garcia's so severe that no reasonable person could be expected to endure it?
Yes ___ No _X_

6) If you answered "Yes" to Questions No. 1, 2, 3, and 5, what amount of damages would you award to Thomas Cafferty?
$ _N/A_

\* \* \* \* \* \*

If "yes" to Question No. 1, Question No. 2, and Question No. 3:

(10) What amount of damages will serve to punish defendant Garcia's of Scottsdale and deter others from the commission of like acts?
$250,000.00

Cafferty brought post-trial motions for amended findings of fact, conclusions of law and a new trial. Those motions were denied.

## ISSUES

1. Did the trial court properly formulate and apply the elements of the tort of intentional infliction of emotional distress in its charge to the jury and its special interrogatory form?

2. Did the special verdict form elicit inconsistent answers from the jury?

3. Was the evidence sufficient for the jury to find all the elements of the tort of intentional infliction of emotional distress, thus entitling Cafferty to judgment?

## ANALYSIS

In *Hubbard v. United Press International,* 330 N.W.2d 428 (Minn.1983), the Minnesota Supreme Court recognized the tort of intentional infliction of emotional distress. The supreme court adopted the formulation of the tort found in the Restatement (Second) of Torts § 46(1) (1965), and set forth the elements as follows:

> (1) the conduct must be extreme and outrageous; (2) the conduct must be intentional and reckless; (3) it must cause emotional distress; and (4) the distress must be severe.

*Id.* at 438–39.

### I.

Cafferty argues that the jury found the first three elements of the tort, but was erroneously instructed regarding the fourth element, the severity of the distress that had to be proven. We cannot agree.

"A complainant must sustain a * * * heavy burden of production in his allegations regarding the severity of his mental distress." *Hubbard,* 330 N.W.2d at 439. The distress inflicted on the victim must be "so severe that no reasonable man could be expected to endure it." *Id.* (quoting Restatement (Second) of Torts § 46 comment j (1965)). This is the level of distress required to prove "severe emotional distress" and a jury should be so instructed.

■ However, "it is for the court to determine whether on the evidence severe emotional distress *can be found;* it is for the jury to determine whether, on the evidence, it has in fact existed." Restatement (Second) of Torts § 46 comment j (1965) (emphasis added). The trial court, therefore, has the obligation to determine whether the evidence offered to prove severe distress is sufficient to allow the claim to go to the jury. In making this determination, the trial court may look to "[t]he intensity and the duration of the distress." Restatement (Second) of Torts § 46 comment j (1965). If the claimed distress is of the type that people commonly encounter and endure in their lives, then the claim should not even be submitted to the jury.

*Poulsen v. Russell,* 300 N.W.2d 289, 297 (Iowa 1981). *See also Hubbard,* 330 N.W.2d at 440 ("the 'injury' proven by this record does not exceed that of any employee who experiences an employer's * * * reproof concerning job performance"); *Eklund v. Vincent Brass and Aluminum Co.,* 351 N.W.2d 371 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. Nov. 1, 1984) (employee's experience of depression and embarrassment was not dissimilar to that of many laid-off employees).

■ The trial court instructed the jury that "[t]he emotional distress suffered by plaintiff must be so severe that no reasonable person could be expected to endure it." This was the proper instruction regarding the required severity of distress under *Hubbard.*

■ Cafferty also presented testimony regarding his peculiar susceptibility to emotional distress. This factor was not present in *Hubbard* but it is recognized by the Restatement:

> The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct may become heartless, flagrant, and outrageous when the actor proceeds in the face of such knowledge, where it would not be so if he did not know. It must be emphasized again, however, that major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough.

Restatement (Second) of Torts § 46 comment f (1965).

In view of evidence of appellant's peculiar susceptibility to emotional distress, the trial court instructed that there is "no liability where the plaintiff has suffered exaggerated or unreasonable emotional distress unless it results from a peculiar susceptibility to such distress of which the

actor had knowledge." [1] *See* Restatement (Second) of Torts § 46 comment j (1965).

Courts have recognized previously that, even if severe emotional distress exists, the defendant may escape liability for his conduct if the distress is exaggerated in comparison to that which a reasonable man would experience under the circumstances, unless the exaggerated distress results from a peculiar susceptibility to such distress of which the defendant had knowledge. *Malandris v. Merrill Lynch, Pierce, Fenner & Smith*, 703 F.2d 1152, 1159 (10th Cir.1981), *cert. denied*, 464 U.S. 824, 104 S.Ct. 92, 78 L.Ed.2d 99 (1983).

Cafferty argues that the Restatement could not have intended a rule which extinguishes liability for extreme reactions. Our reading of the Restatement, however, convinces us that such indeed is the rule intended.

## II.

Cafferty also challenges the trial court's special interrogatories. He alleges the special verdict form elicited inconsistent answers because the questions appear in a misleading sequence, contain duplicative wording, and have a typographical error.

■ Cafferty argues that because of the sequence of the interrogatories, it appeared to the jury that in order to answer question 5 in the affirmative, it first had to answer questions 4 and 4(a) in the affirmative. We cannot agree. The verdict form instructed the jury to answer question 5 regardless of its answer to question 4. This instruction was not confusing. There is no reason to believe that the jury thought its answers in questions 4 and 4(a) dictated its answer to question 5.

■ A more troublesome argument by Cafferty is that the answers to questions 2 and 5 are inconsistent because the jury found that "severe" distress was inflicted in question 2, but then in its answer to question 5 the jury found that the distress

inflicted was not so severe that no reasonable person could be expected to endure it. Since question 5 seems to reflect the Restatement's definition of severe distress, there is at least a facial inconsistency. The trial court has a responsibility to reconcile inconsistent answers to special verdict questions. *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 156 (Minn.1982). The trial court apparently did not consider the jury's answers to be inconsistent, and did not ask the jury to reconcile its answers.

In its post-trial memorandum, the trial court explained that in question 5, "[t]he jury * * * found that but for his particular susceptibility, plaintiff would not have suffered the emotional distress in fact suffered * * *." We believe the trial court's explanation is correct.

■ We think the jury, in answering question 5, found that Cafferty's distress arising solely from his termination, absent any post-traumatic stress syndrome, was not so great that a reasonable man could not endure it. This is nothing more than a finding that Cafferty suffered distress which was exaggerated in comparison to that which a reasonable man would have experienced under the circumstances. Viewed in this manner, the answers are not inconsistent and the evidence supports the trial court's interpretation of the jury's answers.

■ Appellant also argues that an error in question 10 prejudiced him. That interrogatory stated:

"What amount of damages will serve to punish defendant Garcia's of Scottsdale and deter others from the commission of like acts?"

The jury was instructed to answer interrogatory 10 if it answered "Yes" to questions 1, 2 and 3. The parties recognize that the instruction preceding question 10 should have instructed the jury to answer question 10 if it answered "Yes" to questions 7, 8 and 9,[2] not questions 1, 2 and 3.

---

**1.** This instruction formed the basis of special verdict from questions 4 and 4(a).

**2.** These questions read as follows:

The jury's response to question 10 was that $250,000 would be an appropriate sum to punish Garcia's and deter others. Cafferty argues that because of the typographical error, the jury did not give question 5 its due weight since the jury thought that it could award damages upon affirmative answers to only questions 1, 2 and 3. The record before us gives no indication that the typographical error in question 10 caused the jury to give less than due consideration to its answer to question 5. What it did do was cause the jury to answer a question it should not have answered.

### III.

■ While we have addressed Cafferty's contentions regarding the deficiencies of the special verdict form, we feel compelled to note that ultimately any deficiencies which may be detected in the special interrogatories constitute harmless error because the evidence was insufficient to support a verdict for Cafferty. *McBride v. Sears, Roebuck & Co.*, 306 Minn. 93, 96, 235 N.W.2d 371, 374 (1975). Cafferty claims that the manner in which Garcia's terminated his employment constituted extreme and outrageous conduct under *Hubbard* Taking the conduct at its worst, Garcia's intentionally placed a totally unexpected termination notice on Cafferty's desk, knowing that Cafferty would see the notice; Garcia's then met privately with Cafferty and terminated him, sending him on his way a few minutes after he had arrived for work.[3] This conduct appears to be little more than the traditional "pink slip" in the pay envelope of an unsuspecting employee. While not a compassionate or humane practice, unexpected information or notification of termination of employment does not constitute "conduct utterly intolerable in a civilized society." *Hubbard*, 330 N.W.2d at 440. The evidence was insufficient to support the jury's finding that Garcia's conduct was extreme and outrageous.

Finally, Cafferty maintains that he should receive the $250,000 award because the jury found that $250,000 would punish Garcia's and deter others from such conduct in the future, and it also found all the elements of the tort in its responses to questions 1, 2 and 3. In view of our discussion above, however, it is apparent that neither the jury's findings nor the law support Cafferty's recovery of this award.

### DECISION

The trial court properly instructed the jury on the law of intentional infliction of emotional distress. The special verdict form did not elicit inconsistent answers from the jury. In any event, any deficiencies in the special verdict form constituted harmless error since the evidence was insufficient to support a finding that Garcia's conduct was extreme or outrageous.

Affirmed.

---

7) If you answered "Yes" to Questions No. 1, 2, 3 and 5, did defendant Garcia's of Scottsdale's conduct directly cause injury to the plaintiff Thomas Cafferty?
Answer Yes or No N/A
If "Yes" to Question No. 7:
8) Was defendant Garcia's of Scottsdale's conduct willful or malicious?
Answer Yes or No N/A
If "Yes" to Question No. 7 and Question No. 8:
9) Does justice require punitive damages in this case?
Answer Yes or No N/A

**3.** A defendant's knowledge of a plaintiff's peculiar susceptibility may lower the burden of production of evidence of outrageous conduct. *See* Restatement (Second) of Torts § 46 comment f (1965); *Malandris*, 703 F.2d at 1159. Here, however, it is undisputed that none of Garcia's employees knew of Cafferty's post-traumatic stress syndrome at the time of the termination, since Cafferty himself was unaware of the syndrome until August 1983.