**Alfred GARIONIS,**
**Appellant/Cross-Appellee,**

v.

**Harriet NEWTON and Keith Barr,**
**Appellees/Cross-Appellants.**

Nos. 86–2085, 86–2148.

United States Court of Appeals,
Eighth Circuit.

Submitted April 13, 1987.

Decided Aug. 21, 1987.

Timothy Dudley, Little Rock, Ark., for Garionis.

Winston Bryand, North Little Rock, Ark., for Keith Barr.

Robert Hargraves, Hot Springs, Ark., for Harriet Newton.

Before LAY, Chief Judge, ARNOLD and WOLLMAN, Circuit Judges.

ARNOLD, Circuit Judge.

Alfred Garionis sued Ralph Young, Harriet Newton, and Keith Barr under 42 U.S.C. § 1983, claiming that they violated his federal constitutional rights. On Garionis's motion, Young was dismissed before trial, and the jury returned a verdict in favor of Newton and Barr. Garionis moved for a new trial or judgment notwithstanding the verdict, but these were denied by the District Court,[1] and judgment was entered on the verdict. Newton moved for an award of attorney's fees against Garionis, but this was also denied. Garionis appeals from the judgment, while Newton cross-appeals from the judgment (contending that the case should never have gone to trial)[2] and from the denial of her motion for fees. We affirm in all respects.

I.

On November 6, 1984, which was a general-election day, Garionis went to his assigned polling place, Westminister Presbyterian Church in Hot Springs, Garland County, Arkansas, to vote. One of the issues on the ballot was a proposed amendment to the State Constitution to legalize casino gambling. Garionis was wearing a small pin on his lapel, demonstrating his opposition to the proposed amendment; the pin depicted a pair of dice inside a red circle, with a red line through the circle.

---

1. The Hon. Oren Harris, Senior United States District Judge for the Eastern and Western Districts of Arkansas.

2. It was not necessary for Newton to cross-appeal in order to argue in this Court that the District Court should have granted her motion for summary judgment, or directed a verdict in her favor. The jury returned a verdict for defendants, and judgment has been entered on that verdict. The prevailing party below may urge, in support of the judgment, any ground appearing in the record, whether or not she prevailed on that ground in the trial court. No cross-appeal is necessary to enable an appellee to make that kind of argument. Newton would still have cross-appealed, of course, to contest the denial of fees.

While Garionis was standing in line to vote, a clerk asked him to remove the button. When he refused, she called the chief election judge at the precinct, Ralph Young, who told Garionis that wearing the button in the polling place violated the Arkansas Political Practices Act, Ark.Stat. Ann. § 3–1104(k) (Supp.1985),[3] and requested that he remove it. Garionis read a copy of the law and, contending that wearing the button was not "electioneering," refused to take it off. Young would not let Garionis vote while he wore the pin, and Garionis refused to leave the precinct until he got to vote, but he would not take off the pin.

With the situation at loggerheads, Young telephoned the Election Commission, which told Young to call the police. Young then called on Harriet Newton, who was a reserve deputy sheriff, and was parking cars and directing traffic at the precinct, for help. Newton asked Garionis to step out of the voting line, which he did, and either to leave the polling place or remove the button, which he refused to do. Garionis said that he would leave the polling place only if he were arrested, and Newton then arrested him and took him outside. There she conferred with Keith Barr, who was a Hot Springs Police officer. After discussing the situation with Newton, Garionis, and Young, Barr took custody of Garionis, booked him at the police station for two misdemeanor violations (disorderly conduct and obstructing governmental operations), and put him in jail. Later that day Garionis was released on bail and went back to the church to vote (this time without the button, which had been seized as evidence). He was not charged under the Political Practices Act, and the other charges were dropped after about a month.

## II.

Garionis's complaint alleged violations of his rights under the First, Fourth, and Fourteenth Amendments. On appeal, however, he does not raise any First Amendment issues; we therefore do not consider any issue (such as the validity of a law making electioneering a crime) that might arise under the First Amendment. Instead, Garionis argues that the evidence was insufficient to support the jury verdict for Barr, and that the District Court erred in failing to instruct the jury on his Fourth Amendment theory, in submitting the issue of qualified immunity to the jury, and in instructing, or refusing to instruct, the jury on several other issues. To dispose of his appeal, we need to discuss only the qualified-immunity question.

The only relief Garionis requested was money damages, Add. A–3 to Appellant's Brief; he did not seek injunctive or declaratory relief. Thus the threshold issue is whether Newton and Barr are qualifiedly immune from damages, for, if they are, Garionis cannot recover against them, and we must affirm the judgment. Newton and Barr are entitled to qualified immunity unless their actions violated clearly established law. *Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2818, 86 L.Ed.2d 411 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In this context, since Garionis raises only the Fourth and Fourteenth Amendment issues, the question is whether a reasonable officer could have believed that there was probable cause to arrest and take him away from the polling place. See *Anderson v. Creighton*, — U.S. ——, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Malley v. Briggs*, 475 U.S. 335, 344–45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). The record below demonstrates that Newton had probable cause to arrest Garionis for violating the Political Practices Act. It follows *a fortiori* that neither the

---

**3.** The statute reads in part:

The violation of any of the following shall be deemed misdemeanors punishable as hereinafter provided:

*   *   *   *   *   *

(k) No officer of election shall do any electioneering on any election day. No person shall hand out or distribute or offer to hand out or distribute any campaign literature or any literature regarding any candidate or issue on the ballot, to solicit signatures on any petition, to solicit contributions for any charitable or other purpose, to do any electioneering of any kind whatsoever within one hundred (100) feet of any polling place on election day.

arrest nor the subsequent transfer of custody to Barr violated clearly established law. Thus both defendants are entitled to judgment in their favor.[4]

At the outset, we note that qualified immunity is a question of law. *Mitchell,* 472 U.S. at 527–29, 105 S.Ct. at 2816–17. The District Court submitted the immunity issue to the jury, and this was error. But since this is a purely legal question, we can consider it *de novo* on appeal. And since we determine that the defendants were entitled to qualified immunity as a matter of law, the submission of the issue to the jury (which reached the same result) did not prejudice the defendants. See *McIntosh v. Weinberger,* 810 F.2d 1411, 1431 n. 8 (8th Cir.1987).[5]

A law-enforcement officer has probable cause to arrest a suspect without a warrant if the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979) (citations omitted). The Political Practices Act makes it a crime "to do any electioneering of any kind whatsoever within one hundred (100) feet of any polling place on election day."

There was overwhelming evidence of Newton's probable cause to arrest Garionis for violating this statute. No one disputes that she saw him in a polling place, on an election day, wearing a button urging defeat of the casino-gambling amendment, which was on the ballot. Even Garionis's brief in this Court contains a concession "that defendant Newton was entitled to [a jury] instruction on good faith [6] because she claimed that she arrested plaintiff for electioneering and the electioneering statute is ... subject to defendant's interpretation." Appellant's Br. at 11–12. Whether wearing the button was in fact "electioneering" or not may be a difficult question, but that is not the issue, for probable cause to arrest "does not depend on whether the suspect actually committed a crime." *DeFillippo,* 443 U.S. at 36, 99 S.Ct. at 2631. Instead, the issue is whether a reasonably cautious person in Newton's position would have believed that Garionis was violating the Act. That is certainly the case here. Nor does it matter that when Garionis got to the police station, he was charged not with electioneering, but with other misdemeanors. The issue of probable cause is to be judged from Newton's point of view, and as of the time of arrest, at least where, as here, there is no reason to believe that the arrest was a pretext to enable the police to get custody

4. Part of Newton's cross-appeal contends that the District Court erred in not entering summary judgment for her. The Court refused to do so because it thought material fact issues remained in dispute. Because we hold that she was entitled to judgment as a matter of law on the basis of the facts proved at trial, the issue of summary judgment is now moot. We note that Newton could have taken an interlocutory appeal from the denial of summary judgment on her claim of qualified immunity, see *Mitchell v. Forsyth,* 472 U.S. 511, 524–30, 105 S.Ct. 2806, 2814–18, 86 L.Ed.2d 411 (1985); *Wright v. South Arkansas Regional Health Center,* 800 F.2d 199, 201–03 (8th Cir.1986), but she did not.

5. We have phrased the ground of affirmance as "qualified immunity" primarily because the case has been argued in those terms. There are in fact two separate possible defenses in this kind of case: (1) defendants in fact had probable cause; (2) though defendants did not have probable cause, a reasonable officer could have

thought they did. In form, the first defense is on the merits. The second one is an affirmative defense of qualified immunity, good only in actions for damages against individual officers. On the facts of the present case, the two defenses coalesce. Because defendants had probable cause in fact, it must also be true that a reasonable officer could have thought they did.

6. The use of the phrase "good faith" in this context, though common, is mistaken. "Good faith" is a subjective concept. Since *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), qualified immunity is, at least in most cases, an objective inquiry: "the objective (albeit fact-specific) question whether a reasonable officer could have believed [the] warrantless [arrest] to be lawful, in light of clearly established law and the information the [arresting] officer[ ] possessed. [The defendant's] subjective beliefs about the [arrest] are irrelevant." *Anderson v. Creighton, supra,* 107 S.Ct. at 3040.

of Garionis to investigate him on other charges for which probable cause was lacking.

Garionis argues further that Barr also arrested him, and that there was no probable cause for that arrest. The factual basis for this contention is that Barr, after discussing the situation with Garionis, told him to be quiet while he spoke with Young outside the polling place. When Garionis tried to interject a word or two, Barr became angry, told Garionis he was under arrest, and placed him in the back seat of the police car. Garionis claims that, regardless of whether Newton had probable cause to arrest for electioneering, there must be new and independent probable cause to support Barr's later arrest.

■ The flaw in this argument is that a person who is already under arrest and in police custody cannot be "rearrested." An arrest presumes that the person arrested was at liberty, free from police custody, before the arrest. This premise does not hold when the subject is already in custody of law-enforcement officers, see *Kelley v. Swenson*, 481 F.2d 86, 88 (8th Cir.1973); see also *United States v. Rundle*, 450 F.2d 517, 520 (3d Cir.1971); *Hayes v. United States*, 367 F.2d 216, 221 (10th Cir.1966). At least when, as here, there is no allegation (nor even any basis for an allegation) that Newton released Garionis from custody, there was no subsequent arrest, and no need for probable cause, when Barr took custody of Garionis from Newton.

■ There is no real dispute over the facts relating to Newton's arrest of Garionis, and these facts establish that Newton had probable cause to arrest. That being so, it must follow that neither Newton nor Barr violated Garionis's clearly established rights when they arrested and detained him. Therefore both defendants are entitled, as a matter of law, to qualified immunity from damages. This conclusion entirely disposes of Garionis's appeal, for his only claim, which is for damages for violation of his Fourth and Fourteenth Amendment rights, is barred by immunity. Thus we need not reach the other issues he raises here.

### III.

■ In addition to her appeal from the judgment, which we have addressed already, *supra* n. 4, Newton claims that the District Court erred by denying her motion for attorney's fees. As a prevailing defendant, she is entitled to attorney's fees under 42 U.S.C. § 1988 only if Garionis's action was " 'frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.' " *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (per curiam), quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). In the similar situation of fee awards to prevailing Title VII defendants, see *Hughes*, 449 U.S. at 14, 101 S.Ct. at 178, we have held that the issue of whether plaintiff's action was frivolous, unreasonable, or without foundation is primarily for the District Court to decide, and we will review only for abuse of discretion. *Robinson v. Monsanto Co.*, 758 F.2d 331, 336–37 (8th Cir.1985). We see no reason to apply a different standard under § 1988.

We find no abuse of discretion in the denial of fees here. Garionis's complaint alleged claims that on their face had ample legal and factual foundation. Although we have disposed of his action on a threshold legal issue, the fact that we have done so does not mean that the action wholly lacked foundation or was frivolous or unreasonable. See *Hughes*, 449 U.S. at 15 n. 13, 101 S.Ct. at 179 n. 13. We have had the benefit of appellate argument and briefing, and a clear appellate record. We cannot conclude, *post hoc*, that, because Garionis lost on a legal issue, his action warrants an award of fees to Newton. See *Christiansburg Garment Co. v. EEOC*, 434 U.S. at 421–22, 98 S.Ct. at 700–01.

### IV.

For the foregoing reasons, the judgment is, in all respects,

Affirmed.