Keith L. **BAHR** and Sharon **BAHR**, Plaintiffs,

v.

**COUNTY OF MARTIN**, Kenneth G. Schwieger, Michael Roggow, James B. Clover, Ronald R. Willard, Rick D. Kjolsing, Torrey Carlblom and Farm Credit Bank of St. Paul, Defendants.

Civ. No. 4–90–265.

United States District Court,
D. Minnesota,
Fourth Division.

July 16, 1991.

Todd F. Lundquist, Scott Bryan Lundquist, Lundquist & Roth, Mankato, Minn., for plaintiffs.

Roger L. Rowlette, Johnson & Lindberg, P.A., Minneapolis, Minn., for defendants Martin County, Kenneth G. Schwieger, Michael Roggow, James B. Clover and Ronald R. Willard.

Gary W. Koch, David W. Sturges, Gislason, Dosland, Hunter & Malecki, New Ulm, Minn., for defendants Farm Credit Bank of St. Paul, Rick Kjolsing and Torrey Carlblom.

## ORDER

DOTY, District Judge.

This matter is before the court on defendants' motion for summary judgment. Based on a review of the file, record and proceedings herein, the motion is granted in part and denied in part.

## FACTS

This action arises out of the arrest of Keith L. Bahr ("Bahr") by Martin County deputy sheriffs on April 12, 1988. On the morning of April 12, 1988, Martin County sheriff deputies Ronald R. Willard, Kenneth G. Schwieger, Michael Roggow and James B. Clover were at a farm called Regency Farms to seize property pursuant to a writ of restitution issued by the Martin County District Court. The writ followed a foreclosure by Farm Credit Bank of St. Paul ("FCB") and permitted the repossession of Regency Farms and personal property belonging to Larye Anderson, the owner of the farm.

Bahr had done some work for Anderson at Regency Farms and Anderson allowed Bahr to store some of his farm equipment there. Bahr claims that he had received no notice of FCB's planned repossession, although FCB contends that it mailed notification to Bahr's correct address in December, 1987.

On April 12, 1988, Bahr decided to pick up some of his equipment from Anderson's farm in order to begin his spring planting. As he approached the farm, Bahr noticed that the driveway was blocked by various vehicles, including several semitrailer trucks. Bahr claims that he did not know that some of the vehicles were law enforcement vehicles. Kenneth Kabe, another farmer who owned equipment that was stored at Regency Farms, and Ron Hoscheid, the driver of a fertilizer truck, were waiting at the end of the driveway because some of the deputies had refused to let them enter the property. The deputies told them that they had to wait until FCB officials returned to the farm. Bahr, however, evaded the blocked drive and entered the

property by driving off the road through a shallow ditch and onto the grass.

Defendants Willard, Schwieger, Roggow, and Clover were at the farm when Bahr arrived. Defendants Rick D. Kjolsing and Torrey Carlblom, employees of FCB, had been at the farm at various times that morning to direct the repossession, but were not present while Bahr was at the farm. Bahr parked his pickup truck directly behind one of the semitrailers. As he stopped, Willard and Schwieger approached his truck. Clover and Roggow drove up behind Bahr and parked a law enforcement vehicle about 20 feet behind Bahr's truck.

Bahr complained to the deputies that he owned some of the property that they were about to repossess. Willard told Bahr to move his truck back to the road and then return to identify his equipment. Some of the deputies began to either arrest Bahr or to pull him from his truck when Willard told them to stop because Bahr had agreed to move his truck. *See* Keith Bahr Deposition at 19. Bahr's truck was sandwiched between the semitrailer and the law enforcement vehicle, so Bahr put his truck in reverse and then turned it sharply to drive back toward the road. Bahr contends that he only backed up about six feet and that he was driving in a normal and cautious manner. While looking over his right shoulder to back up, Bahr failed to notice Roggow, who was walking along the left side of Bahr's truck. Although defendants sharply disagree with his version of the facts, Bahr contends that he almost hit Roggow because of Roggow's inattention. After his truck nearly struck Roggow, one of the deputies shouted at Bahr to stop.

Bahr alleges that he was then violently pulled from his truck, handcuffed and thrown into the back of a vehicle belonging to the Martin County Sheriff.[1] Schwieger climbed into the vehicle to drive Bahr to the Martin County jail in Fairmont, approximately 15 to 18 miles away.

After Bahr drove off the road to enter the farm, Ron Hoscheid blocked the driveway with his truck, attempting to help Bahr by preventing the deputies from leaving the farm. When Schwieger saw that Hoscheid's truck was blocking the driveway, he also arrested Hoscheid and pushed him into the back seat on top of Bahr. Bahr was lying on the seat and was unable to sit up because he was so tightly handcuffed.

Schwieger allegedly drove to Fairmont at speeds ranging between 75 to 90 miles an hour. Bahr alleges that Schwieger narrowly missed colliding with a tractor during the trip to Fairmont and that the near collision, combined with the high speeds, made Bahr fear for his life. Bahr further alleges that Schwieger told Hoscheid and Bahr that he was driving at high speeds so that he could quickly return to Regency Farms to help arrest more people.

Bahr was charged with assault, obstructing legal process, reckless driving and refusal to comply with the lawful order of an officer.[2] Hoscheid was also charged with obstructing legal process. Bahr alleges that his handcuffs were so tight that it took two officers to remove the handcuffs. He contends that the handcuffs injured his hands and wrists and that jail officials were unable to fingerprint him because one of his hands was so swollen and bruised. An officer at the jail also told Bahr that he had to be taken to the hospital for treatment of his injuries.

As a result of the incident, Bahr claims permanent and severe injuries to his shoulders, allegedly caused by the violent removal from his pick-up truck, and to his hands and wrists, allegedly caused by the excessively tight handcuffs. Bahr and his wife seek damages for permanent injury, past and future medical expenses, loss of income and loss of future earning capacity. They bring this lawsuit against two groups of defendants: the Martin County defen-

---

1. Bahr specifically claims that Roggow and Schwieger threw open the doors of his truck and simultaneously pulled on his arms, seeking to remove him from his truck. After pulling him from the truck, Bahr contends that Roggow tightly handcuffed him as Clover and Schwieger slammed him against the side of his truck.

2. Bahr was acquitted of the criminal charges after a trial in state court in November 1988.

dants (the county itself and its employees, Schwieger, Roggow, Clover and Willard) and the Farm Credit defendants (Farm Credit Bank of St. Paul and its employees, Kjolsing and Carlblom), asserting the following claims: (1) civil rights violations under 42 U.S.C. § 1983; (2) assault; (3) battery; (4) false imprisonment; (5) intentional infliction of emotional distress; (6) negligent infliction of emotional distress; (7) malicious prosecution; and (8) conversion.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Stated in the negative, summary judgment will not lie if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id.* at 250, 106 S.Ct. at 2511. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *Celotex*, 477 U.S. at 324,

106 S.Ct. at 2553. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. at 2552–53. With this standard at hand, the court will consider defendants' motion for summary judgment.

### A. *Federal Claims Under 42 U.S.C. § 1983*

Plaintiffs allege that all of the defendants, Martin County, its employees Schwieger, Roggow, Clover and Willard, FCB and its employees Kjolsing and Carlblom, violated their constitutional rights and are thus liable under 42 U.S.C. § 1983. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State ... subjects or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

A plaintiff alleging § 1983 claims must essentially establish two elements: (1) a deprivation of a right secured by the constitution or laws of the United States; and (2) that the deprivation was committed "under color" of a state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 931, 102 S.Ct. 2744, 2750, 73 L.Ed.2d 482 (1982). The Supreme Court construes the phrase "under color of" a state law as the equivalent of the "state action" that is required for a violation of the fourteenth amendment. *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 2765, 73 L.Ed.2d 418 (1982). Rephrased, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2754.

Section 1983 " 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Graham v. Connor*, 490 U.S. 386, 393–94, 109 S.Ct. 1865, 1870,

104 L.Ed.2d 443 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3, 61 L.Ed.2d 433 (1979)). Instead, a § 1983 claim must identify a specific constitutional right that was allegedly deprived under color of state law. With this framework, the court will address plaintiffs' § 1983 claims against each of the three types of defendants.

### 1. Martin County

■ Under § 1983, Martin County, as a municipality, may not be held liable for the conduct of its employees pursuant to a theory of respondeat superior. *Pembaur v. Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986); *Monell v. Department of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978). Rather, a municipality may be liable only if the plaintiff can show that an official policy of the government is "the moving force of the [alleged] constitutional violation." *Id.* at 694, 98 S.Ct. at 2038; *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 820, 105 S.Ct. 2427, 2434, 85 L.Ed.2d 791 (1985) (plurality opinion). In other words, a local government may be liable under § 1983 only "where a deliberate choice to follow a course of action is made from among various alternatives," and that policy choice amounts to a constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989).

Plaintiffs fail to allege any policy or failure of policy by Martin County that would constitute the "moving force" behind Bahr's arrest. Plaintiffs' version of the facts also fails to suggest such a policy. Moreover, any implication that the Martin County deputies acted in accordance with a county policy because of a single episode, that is Bahr's arrest, is also insufficient to establish municipal liability under § 1983. *See id.* at 390–91, 109 S.Ct. at 1205–06.

Accordingly, the court grants Martin County's motion for summary judgment on plaintiffs' § 1983 claim.

### 2. Employees of Martin County

■ Although it is not clear from their complaint or summary judgment memorandum, plaintiffs apparently allege three possible constitutional violations as the basis for their § 1983 claims against defendants Schwieger, Roggow, Clover and Willard. The first claim alleges that Bahr's arrest was unlawful because the officers lacked probable cause, thus violating the fourth amendment's prohibition against unreasonable seizures of a person. *See Graham*, 490 U.S. at 394, 109 S.Ct. at 1207–08 (noting that the underlying constitutional violation for most § 1983 claims is a violation of either the fourth or eighth amendments). An officer has probable cause for a warrantless arrest if the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Garionis v. Newton*, 827 F.2d 306, 309 (8th Cir.1987) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979)). An officer's improper motives, however, are irrelevant for purposes of determining the existence of probable cause. *Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1079 (8th Cir.1990). According to plaintiffs' version of the facts, defendants Schwieger, Roggow, Clover and Willard had no probable cause to arrest Keith Bahr for any of the four crimes charged.[3] Thus, there is a material fact dispute regarding the existence of probable cause.

■ Even if the § 1983 claim raises a "genuine issue of material fact" concerning probable cause, summary judgment may

---

**3.** The charge of reckless driving comes the closest to meeting the standard for probable cause. Minnesota's reckless driving statute, Minn.Stat. § 169.13 (1990), requires "willful or wanton disregard for safety." Driving a pick-up through a shallow ditch and across a farm yard, however, is common in rural Minnesota and does not conclusively demonstrate a "willful or wanton disregard for safety." As to the other three crimes charged, even if Bahr concedes that he became agitated and raised his voice, additional evidence of a disturbance would be necessary to establish that the Martin County deputies had probable cause for his arrest. As a result, the record does not clearly establish the existence of probable cause.

still be appropriate if the deputies had qualified immunity. Public officials have immunity against civil actions under federal common law unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Application of the qualified immunity doctrine transforms the standard for determining the liability of officers for unlawful arrest from "probable cause" to that of "arguable probable cause." *Gorra v. Hanson,* 880 F.2d 95, 97 (8th Cir.1989). The Eighth Circuit explains that:

> In determining whether the defense of immunity exists, the issue is "not probable cause in fact but 'arguable' probable cause." Qualified immunity protects law enforcement officers in cases in which they "reasonably but mistakenly conclude that probable cause is present...." Actual probable cause, therefore, is not necessary for an arrest to be objectively reasonable. Under this standard, all public officials are protected except the "plainly incompetent" and those who are deemed to have "knowingly violate[d] the law."

*Id.* (citations omitted).

Under this standard, the Martin County deputies had arguable probable cause to arrest Bahr. Even under plaintiffs' version of the arrest, the deputies may have "reasonably but mistakenly" concluded that probable cause existed. For example, Bahr concedes that his truck "almost struck" defendant Roggow.[4] As a result, plaintiffs' § 1983 claim based on unlawful arrest is defeated by the defendants' qualified immunity. Thus, the court grants summary judgment for the Martin County deputies as to this part of plaintiffs' § 1983 claims against them.

■ The second of the three constitutional violations apparently alleged by plaintiffs concerns defendants' use of excessive force when arresting Bahr. An excessive force claim, like one for unlawful arrest, invokes the protections of the fourth amendment, with its guarantee of citizens' rights "to be secure in their persons ... against unreasonable ... seizures" of the person. An excessive force claim requires analysis under the "reasonableness" standard and not under "substantive due process", an approach rejected by the Supreme Court in *Graham,* 490 U.S. at 395, 109 S.Ct. at 1208. The fourth amendment requires a careful balancing of the type of intrusion on plaintiff's fourth amendment interests against the relevant government interest. *Id.* at 396, 109 S.Ct. at 1208–09. Furthermore, the "reasonableness" of an officer's use of force is to be judged from the prospective of a reasonable officer at the scene, not "with the 20/20 vision of hindsight." *Id.* The Supreme Court established the following standard for determining whether an officer may be liable for using excessive force:

> The question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

*Id.* at 397, 109 S.Ct. at 1209.

Applying this standard to the plaintiffs' version of the facts, the deputies' use of force does not appear to be "objectively reasonable." Nothing in the record indicates that the force that the deputies used to arrest, handcuff and transport Bahr to the Martin County jail was "objectively reasonable". Therefore, the defendants' summary judgment motion as to the § 1983 claims based on excessive force is denied.

■ The third possible basis for plaintiffs' § 1983 claim is one for malicious prosecution. The Eighth Circuit has determined that an allegation of malicious prosecution by itself does not constitute a constitutional injury sufficient to support a § 1983 claim because the:

> Constitution does not guarantee that criminal charges will be filed only against the guilty. Rather, the Constitu-

---

**4.** Other circumstances also indicate that the deputies had arguable probable cause to arrest Bahr, including his attempt to stop the reposses-sion, recover his equipment, evade the road block in the driveway and confront the deputies.

tion mandates procedures designed to protect defendants.

*Gunderson v. Schlueter*, 904 F.2d 407, 409 (8th Cir.1990). As a result, defendants' summary judgment motion is granted to the extent that plaintiffs base their § 1983 claim on an allegation of malicious prosecution.

### 3. Farm Credit Bank of St. Paul and Its Employees

Plaintiffs allege that defendant FCB and its employees, Rick Kjolsing and Torrey Carlblom (the FCB defendants), acted with the Martin County defendants in such a way as to be liable for constitutional violations under § 1983. The law does not support such a claim on the facts as asserted by plaintiffs.

Because a § 1983 claim generally may be brought only against a governmental entity or employee, the logical starting point for analyzing a § 1983 claim against a private entity or actor is a consideration of the second element of a § 1983 claim: whether any alleged deprivation of constitutional rights was committed "under color" of state law. The Supreme Court has phrased the question as follows: "is the alleged infringement of federal rights 'fairly attributable to the state?'" *Rendell–Baker*, 457 U.S. at 838, 102 S.Ct. at 2770 (quoting *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753).

The *Lugar* "fair attribution" test has two components: a state policy and a state actor. *Roudybush v. Zabel*, 813 F.2d 173, 176 (8th Cir.1987). Under the state policy component,

> the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.

*Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753. The Eighth Circuit has noted that "the *Lugar* Court made clear that a private party's unlawful use of a constitutional state procedural statute does not, by itself, satisfy the state policy component." *Roudybush*, 813 F.2d at 177. If the state policy component of the "fair attribution" test is not satisfied, it is unnecessary to consider the state actor component. Thus, "[p]rivate misuse of a statute by a private actor is not sufficient to state a claim under section 1983." *Hassett v. Lemay Bank & Trust Co.*, 851 F.2d 1127, 1129 (8th Cir. 1988). Alternatively, a private actor may be liable under § 1983 if a plaintiff can establish a conspiracy or joint participation between the private actor and a state official to deprive the plaintiff of constitutional rights. *Lugar*, 457 U.S. at 931, 102 S.Ct. at 2750; *Myers v. Morris*, 810 F.2d 1437, 1454 (8th Cir.1987).

Plaintiffs' § 1983 claim against FCB and its employees, Kjolsing and Carlblom, appears to be based solely on charges involving the FCB defendants' "private misuse of a statute by a private actor." Further, plaintiffs' pleadings and affidavits fail to establish the existence of a conspiracy or any plans of joint participation with public officials that would indicate that FCB or its employees acted "under color" of state law. As a result, the court grants summary judgment in favor of defendants FCB, Kjolsing and Carlblom regarding plaintiffs' claim pursuant to § 1983.

### B. *Pendent State Claims*

Plaintiffs allege seven state law claims, presumably against all defendants: assault, battery, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, malicious prosecution and conversion.

### 1. Farm Credit Bank of St. Paul and Its Employees

The court grants summary judgment in favor of FCB, Kjolsing and Carlblom on all of plaintiffs' state law claims. Plaintiffs concede that no FCB employees were present at Regency Farms during Bahr's arrest or transport to the Martin County jail. Because plaintiffs have not alleged that any employees of FCB were present, the FCB defendants may not be held liable for assault, *see Johnson v. Sampson*, 167 Minn. 203, 205, 208 N.W. 814, 815 (1926), battery, *see Schumann v. McGinn*, 307 Minn. 446, 451, 240 N.W.2d 525, 529 (Minn.1976), or false imprison-

ment. *See Lundeen v. Renteria*, 302 Minn. 142, 146, 224 N.W.2d 132, 135 (Minn. 1974).

Plaintiffs also fail to allege any facts to support a claim for malicious prosecution by the FCB defendants. Similarly, the court grants summary judgment in favor of the FCB defendants for plaintiffs' claims of intentional and negligent infliction of emotional distress. In acting to repossess real and personal property of Regency Farms, the FCB defendants did not engage in the "extreme and outrageous conduct" that is required for a claim of intentional infliction of emotional distress. *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438–39 (Minn.1983). Further, the plaintiffs' facts fail to establish the severe emotional distress that is required by Minnesota law for intentional infliction claims. *See id.* at 439; *see also Cafferty v. Garcia's of Scottsdale, Inc.*, 375 N.W.2d 850, 853 (Minn.Ct.App.1985) (holding that "[i]f the claimed distress is of the type that people commonly encounter and endure in their lives, then the claim should not even be submitted to the jury"). Plaintiffs have also failed to establish the physical consequences of emotional distress that would support a claim against the FCB defendants for negligent infliction of emotional distress. *See Quill v. Trans World Airlines, Inc.*, 361 N.W.2d 438, 443 (Minn.Ct. App.1985); *see also* discussion *infra.*

Finally, the court grants summary judgment for the FCB defendants concerning plaintiffs' conversion claim. A defendant is not liable for conversion when "the refusal to deliver the property is qualified and the qualification has a reasonable purpose." *McKinley v. Flaherty*, 390 N.W.2d 30, 32 (Minn.Ct.App.1986); *see also Hildegarde, Inc. v. Wright*, 244 Minn. 410, 413, 70 N.W.2d 257, 260 (1955). In refusing to return Bahr's farm equipment until he provided proof of ownership, FCB provided a "reasonable purpose" for its initial refusal to turn over the equipment.

2. Claims Against Martin County and Its Employees for Assault, Battery and False Imprisonment

The court denies the motion for summary judgment by Martin County and its employees ("Martin County defendants") on plaintiffs' claims of assault, battery and false imprisonment because material fact disputes exist regarding all of those claims.

Martin County, which is considered a "municipality" under Minnesota law, may be immune from liability for the conduct of its employees arising from their enforcement of a statute or their performance of a discretionary act. *See* Minn.Stat. § 466.03, subds. 5 & 6. Subdivision 5 provides immunity for:

> any claim based upon an act or omission of an officer or employee, exercising due care, in the execution of a valid or invalid statute, charter, ordinance, resolution or rule.

*Id.* subd. 5. Further development of the facts, however, is necessary to determine whether the Martin County deputies were "exercising due care" during their arrest and transportation of Bahr. Subdivision 6 also provides immunity for any:

> claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

*Id.* Although the Minnesota Supreme Court has held that law enforcement officials generally perform duties that are of an "executive character involving the exercise of discretion", a determination of whether an act is discretionary turns on the facts of each case. *Elwood v. Rice County*, 423 N.W.2d 671, 678 (Minn.1988) (quoting *Cook v. Trovatten*, 200 Minn. 221, 224, 274 N.W. 165, 167 (1937)). As a result, the question of whether Martin County has immunity for its employees' conduct may not be resolved.

Similarly, the court cannot now determine whether the Martin County deputies are protected by the doctrine of official immunity. Minnesota's official immunity doctrine provides:

> that "a public official charged by law with duties which call for the exercise of his judgment or discretion is not person-

ally liable to an individual for damages unless he is guilty of a willful or malicious wrong."

*Elwood,* 423 N.W.2d at 677 (quoting *Susla v. State,* 311 Minn. 166, 175, 247 N.W.2d 907, 912 (1976)) (other citation omitted). In determining whether official immunity exists, the key inquiry is whether the officers were involved in a "discretionary" function during Bahr's arrest and transportation. "Official immunity ... protects public officials from the fear of personal liability that might deter independent action and impair effective performance of their duties." *Id.* at 678 (citing *Restatement (Second) of Torts* § 895D comment b) (other citation omitted). Although discretion has a broad meaning in the context of official immunity, *id.,* the determination of official immunity turns on the facts of each case and whether the conduct constitutes a "willful or malicious wrong." Because, as discussed previously, a material fact dispute exists concerning the existence of probable cause to arrest Bahr, summary judgment concerning the question of whether official immunity protects the Martin County deputies must also be denied. Moreover, the Minnesota Supreme Court has determined that where a state law claim for false imprisonment parallels a plaintiff's § 1983 allegations, summary judgment on the parallel tort claim may not be granted if the facts do not permit a determination of whether probable cause existed. *See Johnson v. Morris,* 453 N.W.2d 31, 40 (1990) (holding that court may dismiss parallel state tort claims after granting summary judgment that probable cause exists).

3. Claims Against the Martin County Defendants for Intentional and Negligent Infliction of Emotional Distress, Malicious Prosecution and Conversion

The court grants the Martin County defendants' motion for summary judgment on the claims of intentional infliction of emotional distress, negligent infliction of emotional distress, malicious prosecution and conversion.

■ As previously discussed, summary judgment is granted on plaintiffs' claim for intentional infliction of emotional distress because defendants' alleged conduct does not constitute "extreme and outrageous" behavior. *See Hubbard,* 330 N.W.2d at 438–39. To be "extreme and outrageous," the conduct must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* at 439 (quoting *Haagenson v. National Farmers Union Property & Casualty Co.,* 277 N.W.2d 648, 652 n. 3 (Minn.1979)). Defendants' actions when arresting and transporting Bahr to jail simply do not rise to this level of outrageous conduct.

■ Plaintiffs also may not recover under the separate tort of negligent infliction of emotional distress because such recovery requires a physical symptom or manifestation of the alleged emotional distress, or other assurance of the "genuineness of the claim." *Quill,* 361 N.W.2d at 443; *see also Okrina v. Midwestern Corp.,* 282 Minn. 400, 403, 165 N.W.2d 259, 262 (1969) (noting the requirement of "physical consequences of fright"). The facts as alleged by plaintiffs do not establish the physical symptoms or other indications of severe emotional distress that are required. Further, Sharon Bahr may not recover on this claim because she was not within the "zone of danger" for any physical consequences that resulted from the allegedly negligent conduct. *See Quill,* 361 N.W.2d at 442.

■ Plaintiffs have also failed to allege any facts to support their claim of malicious prosecution against the Martin County defendants. They apparently base this claim on the acts of the county prosecutor and the Martin County deputies that are related to the criminal charges brought against Bahr. In addition to the municipal immunity available under Minn.Stat. § 466.03, decisions by a public prosecutor concerning whether to bring criminal charges are absolutely immune from suit in Minnesota. *Brown v. Dayton Hudson Corp.,* 314 N.W.2d 210, 214 (Minn.1981). Moreover, malicious prosecution claims against any party are strongly disfavored

and have "always been carefully circumscribed." *Lundberg v. Scoggins,* 335 N.W.2d 235, 236 (Minn.1983). Based on the foregoing analysis and plaintiffs' lack of precise allegations, the court grants summary judgment in favor of the Martin County defendants on plaintiffs' claim of malicious prosecution.

 Finally, the court grants the Martin County defendants' motion for summary judgment on plaintiffs' conversion claim. Like the conversion claim against the FCB defendants, no conversion claim exists against the Martin County defendants because any refusal to deliver possession of Bahr's farm equipment was based on the Martin County defendants' reasonable requirement of proof of ownership. *See Hildegarde,* 244 Minn. at 413, 70 N.W.2d at 259; *McKinley,* 390 N.W.2d at 32.

Accordingly, IT IS HEREBY ORDERED that:

1. Martin County's motion for summary judgment on plaintiffs' § 1983 claims is granted;

2. Defendants Schwieger, Roggow, Clover and Willard's motion for summary judgment on plaintiffs' § 1983 claims is:

a. Granted for all claims based on unlawful arrest;

b. Granted for all claims based on malicious prosecution; and

c. Denied for all claims based on excessive force;

3. The motion for summary judgment by Farm Credit Bank of St. Paul, Rick D. Kjolsing and Torrey Carlblom on plaintiffs' § 1983 claims is granted;

4. The motion for summary judgment by Farm Credit Bank of St. Paul, Rick D. Kjolsing and Torrey Carlblom on plaintiffs' state law claims is granted;

5. The motion for summary judgment by Martin County, Schwieger, Roggow, Clover and Willard on plaintiffs' state law claims is:

a. Granted for all claims based on intentional infliction of emotional distress, negli-

gent infliction of emotional distress, malicious prosecution or conversion; and

b. Denied for all claims based on assault, battery or false imprisonment.