**Andre GUITE, Plaintiff,**

v.

**James WRIGHT and Steven James LaShomb, Defendants.**

Civil No. 5–96–175.

United States District Court,
D. Minnesota,
Fifth Division.

Sept. 25, 1997.

Thomas Michael Skare, Newby Lingren Carlson & Skare, Cloquet, MN, for plaintiff.

Mary Alison Lutterman, Duluth City Attorney, Duluth, MN, for defendants.

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

TUNHEIM, District Judge.

Andre Guite brings civil rights and tort claims against officers of the Duluth Police Department arising from their entry into his home to arrest his son. Defendants have moved for dismissal or summary judgment on all claims. For the reasons set forth below, their motions are granted in part and denied in part.

### BACKGROUND

Although there are significant differences in the facts as reported by various witnesses, the following version of the facts is presented in the light most favorable to plaintiff, the nonmoving party.

On October 26, 1994 in Duluth, Minnesota, three young men maced David Jokinen and took his money. He fought back and took a shirt from an attacker. The pocket of the shirt contained a photograph. The next day, Duluth police officer defendant James Wright interviewed Jokinen, who said the photo showed a likeness of one of the robbers. Another officer recognized the photographed individual as David Guite, son of plaintiff Andre Guite. Wright knew about two similar robberies which had occurred during the preceding three days. A phone

caller identified David Guite as one of the perpetrators of these robberies.

Wright then decided to go to the Guite residence to talk to David Guite, and, if need be, arrest him for the robberies. In the juvenile court proceeding, Wright explained that he wanted to make the arrest because he was concerned David Guite would commit other robberies. In his affidavit in this case, Wright adds that he also was concerned that David Guite would know the police had his photograph and would destroy evidence and warn the other robbers to destroy evidence. The officers admit they were not concerned for the safety of people inside the Guite residence.

The interview with Jokinen ended at approximately 3:00 p.m. Wright believed there was insufficient time to work with a prosecutor to prepare the necessary reports, the juvenile delinquency petition, and an affidavit in support of an arrest warrant in order to obtain an arrest warrant before the end of the court's business day. Thus, he decided to go to the Guite home without an arrest warrant.

Shortly after the interview ended, Wright went to the Guite home in plain clothes, accompanied by three uniformed patrol officers, including defendant Steven LaShomb. One officer covered the front door of the home, while the other three approached the back door, which was used as the main entrance. Defendants acknowledge there were enough officers to surround the house to prevent escape.

At the time, Andre Guite and another man were carrying a bed frame into the house. Andre Guite had his left arm in a sling, because of his recent shoulder surgery. The officers then approached the door. There is conflicting testimony about the position of the doors, but Andre Guite testified that he had shut the inside door and that the screen door was closing by operation of an automatic shutter when the officers knocked. Andre Guite returned to the entrance, opened the inside door, opened the screen door with his right hand, and held it open while he conversed with the officers.

Andre Guite admitted that his son lived with him and was present in the house. Wright said he wanted to question David Guite. The father asked why, and Wright did not tell him. Andre Guite testified that he told Wright that he could talk to David Guite if the uniformed officers would leave. Wright declined this offer. Andre testified that he did not "exactly invite him" into the home. Andre Guite asked to see an arrest warrant. Wright said they did not need one. Wright testified that Andre Guite then told him to "get the hell out."

Plaintiff's wife went to get David from the upper floor of the house. He had just come out of the shower and was wearing only boxers. He came down the stairs towards the entrance. LaShomb then took hold of Andre Guite's right wrist, pushed him inside the vestibule of the house, and held him against an open door. This vestibule was just wide enough to allow the inner door to swing open. Wright entered the home and pulled David Guite towards the door. Another officer assisted in pulling him all the way out of the house, and they placed him under arrest.[1] David Guite faced juvenile court proceedings, but he is not a plaintiff in this case.

Andre Guite filed this suit bringing claims under 42 U.S.C. § 1983, the Minnesota Constitution, and state tort law. Both the entry into the home and the force used against Andre Guite are challenged under the Fourth Amendment. There is no claim against the City of Duluth or any other body of municipal government. The federal claim alleges the defendants deprived Guite of his rights to equal protection and due process and his rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free of unreasonable searches and seizures and illegal entry onto his property.

Defendants seek summary judgment on all claims. They contend that plaintiff has failed to state a claim under the Fourteenth Amendment, that defendants' entry into the home and use of force did not violate the Fourth Amendment, and that they are shielded by qualified immunity. They argue

---

1. The witnesses report very different versions of the events described in this paragraph.

that there is no private cause of action to bring claims under the Minnesota Constitution. As for the state tort claims, defendants argue that they are shielded by official immunity and that various elements of the torts are not supported.

## PROCEDURAL POSTURE AND STANDARD OF REVIEW

This case comes before the Court in a peculiar procedural posture. Defendants asserted their immunity defenses in their Answers. On August 14, 1996 they filed motions to dismiss, or in the alternative, for summary judgment. On the same date, defendants filed a motion for stay of discovery pending resolution of these dispositive motions. Magistrate Judge Raymond L. Erickson stayed discovery, with exceptions. He noted that the dispositive motions are premised in part upon the doctrine of qualified immunity and that this defense encompasses a freedom from litigation as well as from liability. *See Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991). Hence, he stayed discovery except to the extent that it is narrowly directed to the qualified immunity defense. Memorandum Order, Sept. 20, 1996. Plaintiff did not appeal this order.

Defendants submitted a memorandum in support of their dispositive motions as if there were only a motion for summary judgment. It is captioned accordingly, it sets forth the standards for summary judgment and not those for dismissal, and it concludes with a request for summary judgment. Defendants submitted affidavits in support of their motion, alleging facts beyond the pleadings.

■ Plaintiff argues that summary judgment is inappropriate based on the record before the Court, and he also argues that the stay of discovery has prevented disclosure of material facts, so that the dispositive motions should be "continued until that information can be discovered." *See* Fed.R.Civ.P. 56(f).

Defendants' reply memorandum observes that plaintiff could have conducted discovery related to the qualified immunity defenses, and that he chose not to do so (beyond serving a few interrogatories). Consequent-

ly, defendants argue that their motions are ripe for decision.

Given this procedural history, the qualified immunity issues are now subject to a proper motion for summary judgment, and no further discovery is necessary. However, the other issues are presented only in motions to dismiss. The motions were originally noticed as motions to dismiss, or in the alternative, for summary judgment. While it is appropriate to consider any challenges to the sufficiency of the Complaint, the limitation on discovery to date makes it inappropriate to consider summary judgment on any issue other than qualified immunity.

■ Thus, the Court analyzes the qualified immunity defense under the standard for summary judgment motions. In determining immunity issues, the Court may consider the entire factual record, including the evidence developed in the related juvenile court proceedings. *See Myers v. Morris*, 810 F.2d 1437, 1444 (8th Cir.1987) (considering evidence from earlier criminal proceedings in ruling upon motions for summary judgment on immunities in civil rights suit arising from the criminal proceedings). The Court need not accept as true any allegations in the pleadings that are without factual support in the record. *Id.*

In appraising the sufficiency of a complaint challenged in a motion to dismiss for failure to state a claim, the Court should dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

## ANALYSIS

### I. Claims under 42 U.S.C. § 1983

Any individual government officials performing discretionary functions have a qualified immunity defense to a Section 1983 claim for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). To determine

whether a defendant has violated a plaintiff's clearly established rights, it is necessary to inquire:

(1) which particular act or omission of the defendant violated the plaintiff's federal rights, and

(2) whether governing case or statutory law would have given a reasonable official cause to know, at the time of the relevant events, that those acts or omissions violated the plaintiff's rights.

*Myers v. Morris,* 810 F.2d 1437, 1444 (8th Cir.1987) (quoting *Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984) (Brennan, J., concurring in part and dissenting in part)).

■ Individuals have a clearly established right to be free from unreasonable searches and seizures under the Fourth Amendment. *Monroe v. Pape,* 365 U.S. 167, 171, 81 S.Ct. 473, 475–76, 5 L.Ed.2d 492 (1961). A free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other seizure of his person is analyzed under the Fourth Amendment's "objective reasonableness" standard, rather than under a substantive due process standard. *Graham v. Connor,* 490 U.S. 386, 388, 109 S.Ct. 1865, 1867–68, 104 L.Ed.2d 443 (1989).[2]

■ To determine whether the force used to effect a seizure is "reasonable" under the Fourth Amendment, courts must balance " 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396, 109 S.Ct. at 1871 (quoting *Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 1699–1700, 85 L.Ed.2d 1 (1985)). The power to make an arrest or investigatory stop necessarily includes the power to use some degree of physical coercion or threat of coercion, so not every push or shove violates the Fourth Amendment. *Graham,* 490 U.S. at 396, 109 S.Ct. at 1871–72. Balancing the interests at stake requires careful attention to the facts and circum-

stances of a particular case, including the severity of the crime at issue, whether the person seized poses an immediate threat to the safety of the officers or others, and whether there is an attempt to actively resist or evade arrest. *Id.* The reasonableness of officers' actions must be judged objectively in light of the facts and circumstances facing them, without recourse to hindsight or consideration of intent or motivation. *Id.* at 396–397, 109 S.Ct. at 1871–72. The issue is whether an objectively reasonable police officer would have believed that the force used was lawful in light of the clearly established law and the information the officer possessed. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987); *Baker v. Chaplin,* 517 N.W.2d 911, 916 (Minn.1994).

■ The first issue is whether there is a genuine issue of fact that plaintiff's Fourth Amendment rights were violated. The two violations alleged involve the officers' entry into Guite's home and LaShomb's use of force.

The courts have drawn a bright line around the home of a citizen, protecting it from warrantless searches and seizures absent probable cause and exigent circumstances. *See Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). There is little doubt regarding probable cause to arrest David Guite; however, the evidence of exigent circumstances is not sufficient to support summary judgment. There was no danger to the people inside the home and none to the officers conducting the arrest. Risk of flight was minimal, given that the officers admit they had the personnel to surround the home. There is at least a genuine factual issue that they could have surrounded the home pending the issuance of an arrest warrant.

Defendants try to escape application of the *Payton* holding by characterizing the case as a doorway arrest rather than an arrest in a home. The Courts of Appeals are somewhat

---

**2.** Plaintiff agrees with defendants that the substantive rights at issue are based upon the Fourth Amendment. Plaintiff explains that his Complaint references the Fourteenth Amendment only because the Fourth Amendment applies to

state action through the Fourteenth Amendment. *See Monroe v. Pape,* 365 U.S. at 171, 81 S.Ct. at 475–76. There is no separate claim under the Fourteenth Amendment, hence summary judgment is not needed on any such claim.

divided on how to treat doorway arrests. *See United States v. Davis,* 785 F.2d 610 (8th Cir.1986) (noting varying standards in other circuits and upholding a warrantless arrest "at the doorway" where there was probable cause, exigent circumstances, and no egregious police misconduct in the course of the arrest). However, viewing the facts in the light most favorable to plaintiff, a reasonable jury could find that the arrest occurred inside the home. Thus, at this stage, the Court need not determine what standard applies to doorway arrests in order to establish that there is a genuine issue of whether defendants violated the Fourth Amendment.[3] Assuming the arrest occurred in the home, the entry violated clearly established law which a reasonable officer should have known. Thus, summary judgment is inappropriate on claims that the entry deprived plaintiff of rights protected by the Constitution.

Similarly, the use of force could be found to be unconstitutional under all the facts and circumstances. The force involved was not extraordinarily violent; however, there is a genuine issue of whether any force was needed under the circumstances. The evidence at this stage does not allow the Court to find that under all the circumstances, a reasonable officer would have known that the force used was not unconstitutional. Thus, summary judgment is inappropriate.

## II. State Law Claims

Although the Complaint states claims under the Minnesota Constitution, plaintiff admitted during the hearing on this motion that there is no private cause of action for violations of the Minnesota Constitution. The Court dismisses these claims.

The Complaint alleges the claims of assault, battery, illegal detention, false imprisonment, use of excessive force and physical brutality, intentional infliction of emotional distress, negligent infliction of emotional distress, and trespass.

Defendants move for dismissal of claims of excessive force and physical brutality on the grounds that Minnesota does not recognize any such torts, except to the extent they are redundant to claims of assault and battery. Plaintiff does not answer these arguments. For this reason, the claims for excessive force and physical brutality are dismissed.

Defendants make a similar argument for dismissal of the claim of illegal detention. They assert that Minnesota does not recognize such a tort. Plaintiff does not respond to this argument.

■■■■ The elements of a claim of false arrest or false imprisonment are "(1) an arrest performed by defendant, and (2) the unlawfulness of such arrest." *Perkins v. County of St. Louis,* 397 N.W.2d 405, 408 (Minn.App.1986). An arrest made without proper legal authority is a false arrest, and any subsequent restraint is false imprisonment. *Id.* Defendants seek dismissal of the false imprisonment claim on the grounds that plaintiff was never arrested; rather he was merely briefly detained. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■■■■ The facts alleged in the Complaint do not support a claim of false imprisonment, or even false arrest. Plaintiff was never arrested or imprisoned. Thus, it is appropriate to dismiss the false imprisonment claim. As for false detention, the Court dismisses this claim because plaintiff has not argued that it exists in Minnesota.[4]

■■■■ Defendants make numerous arguments challenging whether the facts support the remaining tort claims, and they also ar-

---

3. At trial, it may be necessary to give different instructions to the jury depending on whether the jury finds that the arrest occurred in the home or in the doorway.

4. A search on a computer data base confirms that the Minnesota courts have not addressed whether there is a tort labeled "false detention." However, because false detention would be a distinct tort from false arrest, yet analogous to this familiar common law claim, the Court remains open-minded about whether false detention is actionable under Minnesota law. The claim is dismissed in this case solely because plaintiff has made no argument for the existence of this tort. Plaintiff's strategic decision is understandable; on the facts of this case, other claims are more appropriate.

gue that they are subject to official immunity.[5] The Court has considered these arguments and finds that, at this stage of the proceedings, where discovery has been limited only to issues of qualified immunity, dismissal is not appropriate. The Complaint adequately states these claims. When discovery is complete, the Court will entertain any motion for summary judgment on the remaining state tort claims.

## ORDER

Accordingly, based on the above and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that defendants' motion for dismissal or summary judgment [Docket No. 29] is **GRANTED** in part and **DENIED** in part as follows:

1. The motion to dismiss claims under the Minnesota Constitution is **GRANTED;**

2. The motion to dismiss claims of physical brutality, excessive force, false imprisonment, and false detention is **GRANTED;**

3. The motion to dismiss other state tort claims is **DENIED,** without prejudice to a later motion for summary judgment challenging these claims; and

4. The motion for summary judgment on the issue of qualified immunity to claims under 42 U.S.C. § 1983 is **DENIED.**

---

**5.** Official immunity is a common law doctrine which, in the absence of a willful or malicious wrong, protects a public official who is charged by law with duties which call for the exercise of the official's judgment or discretion. *See Olson v. Ramsey County,* 509 N.W.2d 368, 371 (Minn. 1993).