Lillia ADEWALE, Plaintiff,

v.

Patrick WHALEN and City of
Richfield, Defendant.

Civil No. 4–96–1211.

United States District Court,
D. Minnesota,
Fourth Division.

Aug. 7, 1998.

Philip Korman Jacobson, Kelly & Jacobson, Mpls, MN, for Lillia Adewale, plaintiff.

Jon K. Iverson, Erstad & Riemer, Mpls, MN, for Patrick Whalen and City of Richfield, defendants.

## MEMORANDUM OPINION AND ORDER ON SUMMARY JUDGMENT MOTIONS

TUNHEIM, District Judge.

This police misconduct case arises from the arrest of plaintiff Lillia Adewale on May 5, 1996 for misdemeanor obstruction of the legal process. Plaintiff commenced this action against the arresting officer, Patrick Whelan, and the City of Richfield. Plaintiff alleges defendant Whelan violated her civil rights under 42 U.S.C. § 1983 by arresting her without probable cause, using excessive force in the arrest, and detaining her while the arrest was processed. Plaintiff contends the City of Richfield has a policy of condoning the use of excessive force by its police officers and that the City improperly trained police officers to violate civil rights. Plaintiff also asserts several state law claims, including assault and battery, false arrest, false imprisonment, and intentional infliction of emotional distress.

This matter is before the Court on cross motions for summary judgment. Defendants move for summary judgment on all of plaintiff's claims. Defendant Whelan argues he is shielded from liability under the doctrines of qualified and official immunity. The City argues it is entitled to summary judgment because plaintiff has presented insufficient evidence that the City maintains a policy or practice of tolerating abuses of civil rights. Both defendants argue that summary judgment is appropriate on plaintiff's claim of intentional infliction of emotional distress because the events plaintiff contends occurred do not rise to the level of extreme and outrageous conduct, and because plaintiff has not presented proof that she suffered severe emotional distress.

Plaintiff moves for partial summary judgment on her "unlawful jailing" claim against both defendants. Even assuming there was probable cause for her arrest, plaintiff argues that it was unlawful for defendant Whelan to detain her, instead of issuing an citation at the scene. Plaintiff contends that she is entitled to summary judgment on this portion of her § 1983 claims against defendant Whelan.

For the reasons set forth below, the Court grants the City of Richfield's motion for summary judgment in its entirety. Defendant Whelan's motion is granted in part and denied in part. Plaintiff's motion is denied.

## FACTS

On May 5, 1996, at approximately 3:19 a.m., Officers Patrick Whelan and Robert Salter went to the apartment building at 6437 Pleasant Avenue in Richfield, Minnesota to investigate a 911 hang-up call. The front entrance of the building at that address has a locked security door. On the side of the door is a small window through which persons on either side of the door can see each other.

When the officers arrived at 6437 Pleasant Avenue, plaintiff was in the foyer with Jennifer Jefferson, another resident of the building. The officers told plaintiff they were investigating a 911 hang-up call, and asked plaintiff to open the security door. Plaintiff refused to open the door and asked the offi-

cers for identification. The officers pointed to their uniforms, badges and marked cars, and repeated their request for assistance with the door.[1] Plaintiff did not open the door and continued to request identification. Eventually, Jefferson opened the door for the officers.

What transpired next is disputed. Plaintiff claims defendant Whelan placed her under arrest as soon as he entered the building.

Defendant Whelan contends the arrest was not immediate. When he entered the building, defendant Whelan claims plaintiff was loud, that she had been drinking, and that she stepped in front of him, blocking his path to Jefferson. Defendant Whelan also claims plaintiff refused a request to produce identification. When plaintiff refused to produce identification, defendant Whelan claims he arrested her for obstructing the legal process. Defendant Whelan admits that plaintiff's refusal to open the security door was part of the reason he arrested her. At his deposition, defendant Whelan testified as follows:

Q: And what had she done, in your mind, to obstruct the legal process at [the time of arrest]?

A: She had hindered our ability to investigate the 911 hang-up call.

Q: And how had she done that?

A: By yelling incoherently in the hallway, creating a disturbance, momentarily stepping between the stairs that go up and the officers and state, "You're not the police, you cannot come into the building."

Q: Had she done anything else?

A: No.

Q: Was her reluctance to open the door part of the reason that you arrested her?

A: It was part of it.

At her deposition, Jennifer Jefferson testified that defendant Whelan did not arrest plaintiff immediately upon entering the building. However, Jefferson testified that plaintiff did not move in front of the officers.

---

1. Richfield police officers are required to carry billfold identification and to display it upon re-

quest. Officer Whelan did not show plaintiff his billfold identification.

Upon entering the foyer, Jefferson states that one of the officers yelled at plaintiff, and that plaintiff told him she wanted to deal with the other officer. Following the exchange, Jefferson testified that the officer handcuffed and arrested plaintiff. Jefferson states that plaintiff was calm and did not yell. She testified that the officer was disrespectful of plaintiff, and that "he was talking really loud and harsh to her." Jefferson recalls the officers asking plaintiff for identification. Jefferson states that plaintiff told the officers her license was in her apartment, and asked them if they wanted her to retrieve it. Jefferson testified that the officer said "no."

The events that transpired after the arrest are also disputed. Defendant Whelan claims he handcuffed plaintiff and escorted her out of the building. Defendant Whelan states that he began a pat-down search of plaintiff, but discontinued the search when Officer Salter called for assistance. Defendant Whelan placed plaintiff in Salter's squad car while he and Salter investigated the 911 call.

When the officers completed their work in the building, defendant Whelan claims he moved plaintiff to his squad car. After plaintiff was seated in the back seat, Whelan testified that he remembered he had not double-locked plaintiff's handcuffs, and that he needed to finish the pat-down search. Defendant Whelan claims that he had plaintiff step out of the car and move to the rear of the vehicle. He then instructed plaintiff to lean over the back of the car, at which time he double-locked the handcuffs and finished the pat-down search. Defendant Whelan testified that plaintiff was physically compliant, and that he accomplished these tasks without incident.

Plaintiff claims defendant Whelan pulled her out of the squad car by the collar of her shirt. She contends that the officer continued to hold her by the collar of her shirt, while he threw her into the side of the squad car. Plaintiff also claims defendant Whelan called her a "nigger." Defendant Whelan denies using any racial epithets.

An audiotape transcript exists of the conversation between plaintiff and defendant Whelan in or around the squad car. At the end of the transcript plaintiff says "I'm going. Stop pushing on me." Other than this comment, the transcript does reflect any physical struggle between plaintiff and defendant Whelan. The transcript also does not contain any complaints of pain by plaintiff. The record does not establish whether the transcript reflects the entire conversation between plaintiff and defendant Whelan from the time plaintiff exited the squad car through the alleged incident.[2]

Defendant Whelan sent plaintiff to the Hennepin County jail to process her arrest. The parties agree that the officer could have ticketed and released plaintiff, instead of detaining her. Defendant Whelan states that he took plaintiff to the Hennepin County jail to process her arrest because: "She was disorderly, verbally belligerent, intoxicated, and she stated she was going to drive and pick up her daughter, and her vehicle was running on the south side of the building."[3] Defendant Whelan also claims he wanted to prevent plaintiff from returning to the building and causing any further disturbance that evening.

Plaintiff claims she reported the alleged assault by defendant Whelan when she arrived at the Hennepin County jail. She also claims she asked for medical attention. However, the jail intake form does not reflect any complaint of injury within the preceding 24 hours. The form also indicates no present need for medical attention.

Plaintiff was released from jail later on the morning of May 5th. Plaintiff claims she returned to her home and called the Richfield Police to complain that a police officer assaulted her and to report that the officer injured her arm. Paramedics responded to plaintiff's call and examined her arm. The paramedics' report states that plaintiff's arm

---

**2.** In their brief, defendants state that defendant Whelan turned on the audio recorder before he took plaintiff out of the squad car, and that the recorder continued to run during the drive to the Hennepin County jail. However, there is no evidence in the record of the time period during which the recorder ran.

**3.** Although plaintiff contends she was not drunk, plaintiff does not dispute that she had been drinking and that she intended to drive her car.

was "mildly swollen," but appeared aligned and intact. On May 6, 1996, the day following her arrest, plaintiff went to the hospital and was diagnosed with a fractured right forearm.

On August 23, 1996, the Hennepin County Court tried plaintiff for misdemeanor obstruction of the legal process under Minn. Stat. § 609.50. Minnesota Statute § 609.50 makes it a crime to intentionally "obstruct[ ], resist[ ], or interfere[ ] with a peace officer while the officer is engaged in the performance of official duties." Minn.Stat. § 609.50, subd. 1(2). The court found plaintiff not guilty of obstructing the legal process. This lawsuit followed.

## ANALYSIS

### I. Standard of Review

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. It states, in pertinent part:

> [Summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Initially, the movant bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In evaluating the movant's showing, the evidence offered by the non-moving party is to be believed and all justifiable inferences therefrom are to be drawn in the light most favorable to that party. *Matsushita Elec. Indus. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Where a moving party makes and supports a motion for summary judgment in accordance with Rule 56, a party opposing the motion may not rest upon the allegations or denials of its pleadings; rather, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256, 106 S.Ct. 2505; *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir.1995).

### II. Municipal Liability

■ Plaintiff has asserted two theories of liability against the City of Richfield under 42 U.S.C. § 1983. First, plaintiff argues the City maintains a policy of allowing police officers to use excessive force. Second, plaintiff argues the City trained its officers to violate civil rights by arresting citizens who refuse to open security doors for police officers.[4]

---

4. Several claims in the pending motions involve the legality of plaintiff's refusal to assist Officers Whelan and Salter with the security door. The Minnesota Supreme Court has not considered whether the refusal to open a door can amount to obstruction of the legal process. However, courts in other jurisdictions have held that refusing to open a door for police is not obstruction of the legal process. *See Illinois v. Hilgenberg*, 223 Ill.App.3d 286, 165 Ill.Dec. 784, 585 N.E.2d 180 (Ill.App.1991) (defendant's failure to open door at officer's request does not permit prosecution for obstructing a peace officer), *appeal denied*, 144 Ill.2d 638, 169 Ill.Dec. 146, 591 N.E.2d 26 (Ill.1992); *City of Columbus v. Michel*, 55 Ohio App.2d 46, 378 N.E.2d 1077 (Ohio App.10 Dist. 1978) (failure to open door in response to officer's repeated requests does not constitute an act impeding officer in performance of duties); *Kansas v. Hatfield*, 213 Kan. 832, 518 P.2d 389 (Kan.1974) (defendant's refusal to unlock door to

enable officer to serve process does not constitute obstruction of the legal process). If confronted with the issue, this Court holds that the Minnesota Supreme Court would reach the same result.

Even if plaintiff's refusal to provide access to the building was not criminal, it could be unlawful if plaintiff had a legal duty to provide assistance. Under some circumstances, a citizen may have a duty to provide assistance to an officer attempting to make an arrest. Restatement (Second) of Torts § 139, comment (d). However, under the facts in this case, the Court finds plaintiff did not have an obligation to assist Officers Whelan and Salter by opening the security door for them. The officers were not attempting to make an arrest when they encountered the security door, and they did not have a warrant for entry into the building. Although citizens should be encouraged to assist officers whenever

■ A municipality may not be held liable under § 1983 for the conduct of its employees under principles of respondeat superior. *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Bahr v. County of Martin,* 771 F.Supp. 970, 975 (D.Minn.1991). Municipal liability only arises· if a constitutional injury results from an "action pursuant to official municipal policy of some nature." *Monell v. Dep't of Social Serv.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A municipal policy may be an "officially adopted and promulgated" policy of the relevant governing body or may result from a widespread "custom or usage" within the municipality. *Id.* A governmental "custom" may serve as the basis for § 1983 liability "even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.*

In order to state a claim for a municipal "custom or practice," plaintiff must prove "the existence of a governmental custom of failing to receive, investigate, and act upon complaints of violations" of excessive force. *Thelma D. By and Through Delores A. v. Board of Educ. of City of St. Louis,* 934 F.2d 929, 932 (8th Cir.1991). To establish there is such a custom, plaintiff must show:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) That the plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Jane Doe "A" By and Through Jane Doe "B" v. Special School Dist.,* 901 F.2d 642, 646 (8th Cir.1990).

The City of Richfield argues plaintiff does not have sufficient evidence to support her § 1983 claims. The Court agrees.

■ First, plaintiff has presented no evidence to support her charge that Richfield police engaged in a widespread pattern of unconstitutional misconduct. The Court therefore grants the City's motion for summary judgment on this portion of plaintiff's § 1983 claim against the City.

■ Plaintiff's other theory is that the City trained its officers to arrest people who do not open doors for them. Inadequate training may serve as a basis for liability against a municipality when the failure to train "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

■ Plaintiff bases her inadequate training theory on· the deposition testimony of Barry Fritz, Deputy Director of the Richfield Police Department. Fritz testified that he does not think it is improper to arrest someone for refusing to open a security door. Although Fritz is involved in establishing the policies of the Richfield Police Department, Fritz' testimony does not prove that the City deliberately disregarded the rights of citizens. At most, Fritz' testimony expresses a lay opinion on a legal issue. Plaintiff has not presented any evidence that the City of Richfield adopted Fritz' opinion as a formal or informal policy, or that Fritz instructed Richfield police officers to arrest citizens who refuse to open security doors.

Moreover, plaintiff has failed to present evidence that any other citizen was arrested for refusing to open a security door, as would be expected if the City of Richfield trained its officers to arrest citizens for this conduct. Even assuming the arrest of plaintiff was improper, an isolated incident of police misconduct is not sufficient to establish municipal liability. *See, e.g., Wedemeier v. City of Ballwin,* 931 F.2d 24, 26 (8th Cir.1991); *Bahr,* 771 F.Supp. at 975.

For these reasons, Deputy Director Fritz' testimony is not sufficient, as a matter of law, to create a genuine issue of material fact concerning plaintiff's improper training theory. Summary judgment is therefore appro-

---

possible, a bystander is not under any legal obligation to open a door for a police officer performing an investigation without a warrant.

Thus, plaintiff did not engage in illegal conduct when she refused to open the security door for Officers Whelan and Salter.

priate on plaintiff's claim that the City of Richfield improperly trained its officers to arrest citizens for refusing to open doors for police.

For the foregoing reasons, the Court grants the City of Richfield's motion for summary judgment on plaintiff's § 1983 claims.

### III. Qualified Immunity

Defendant Whelan argues he is entitled to summary judgment on plaintiff's § 1983 claims under the doctrine of qualified immunity. Plaintiff contends genuine issues of material fact preclude summary judgment on the issue of qualified immunity.

 A government official performing discretionary functions is entitled to qualified immunity if his conduct does not violate "clearly established" constitutional or statutory rights of "which a reasonable person would have known." *See, e.g., Ludwig v. Anderson*, 54 F.3d 465, 470 (8th Cir.1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). To withstand a motion for summary judgment based on qualified immunity, a civil rights plaintiff must: 1) assert a violation of a constitutional right; 2) demonstrate that the alleged right is clearly established; and 3) raise a genuine issue of fact as to the objective reasonableness of the officer's conduct in light of the law and the information the officer possessed at the time. *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir.), *cert. denied,* — U.S. ——, 117 S.Ct. 518, 136 L.Ed.2d 407 (1996). Although the question of qualified immunity is ordinarily a question of law for the Court, "where the plaintiff presents a factual account where a reasonable officer would not be justified in making an arrest, then a material dispute of fact exists." *Arnott v. Mataya*, 995 F.2d 121, 124 (8th Cir.1993).

Plaintiff claims violations of her civil rights based on her arrest, the alleged use of excessive force, and the fact that she was jailed. The Court will consider each claim in turn.

### A. Unlawful Arrest

The first two elements of the test for qualified immunity are not disputed—an unlawful arrest claim asserts a violation of the Fourth Amendment right against unreasonable seizures of a person, and probable cause is the clearly established standard for making an arrest. *See Myers v. Morris,* 810 F.2d 1437, 1455 (8th Cir.) (stating the "right to be free from arrest without probable cause" is a clearly established Fourth Amendment right), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987).

There is a dispute concerning the third prong of the test for qualified immunity. Under that prong, the Court must determine whether material issues of fact remain as to the objective reasonableness of defendant Whelan's belief that he had probable cause to arrest plaintiff. *See Ludwig,* 54 F.3d at 470 (8th Cir.1995). Obviously, if undisputed facts establish probable cause, summary judgment is appropriate. However, even if defendant Whelan did not have probable cause to arrest plaintiff, he is still protected by qualified immunity if he reasonably believed he had probable cause. *See, e.g., Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). "Arguable probable cause" is all that is needed. *See, e.g., Gorra v. Hanson,* 880 F.2d 95, 97 (8th Cir.1989).

 Applying this standard, the Court finds there is a genuine fact dispute concerning whether defendant Whelan had arguable probable cause to arrest plaintiff. Defendant Whelan's argument that arguable probable cause existed relies on his version of the facts; specifically, that plaintiff did something to obstruct his investigation other than refuse to open the security door. Plaintiff presents her own testimony and the testimony of Jennifer Jefferson to support her claim that she did not do anything that would have given Whelan arguable probable cause to arrest her. If true, plaintiff's version of what occurred would leave the officer without any reason to believe that plaintiff had committed or was committing a crime. As such, defendant Whelan would not have had arguable probable cause for the arrest. *See Michigan v. DeFillippo,* 443 U.S. 31, 37, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979) (" '[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person ... in believing, in the circumstances shown, that the suspect has committed, is commit-

ting, or is about to commit an offense."). Thus, defendant Whelan's motion is denied as to this portion of plaintiff's § 1983 claim.

### B. Excessive Force

Defendant Whelan also contends he is entitled to qualified immunity on plaintiff's excessive force claim. Whelan claims plaintiff cannot show that he used excessive force in plaintiff's arrest because plaintiff does not have expert testimony showing how she broke her arm. Due to the lack of expert testimony, defendant Whelan argues that the jury would have to speculate about the cause of plaintiff's injuries.

 Plaintiff's allegations of excessive force are analyzed under the framework set forth in *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Under *Graham,* the Court must determine whether the officer's actions are " 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motive." Every push, shove, or other form of physical contact does not constitute excessive force. *See, e.g., Foster v. Metropolitan Airports Comm'n,* 914 F.2d 1076, 1081–82 (8th Cir.1990). Courts must look at the "totality of the circumstances" to determine if the amount of force used was reasonable, including consideration of the severity of the crime, whether the suspect posed a threat to the officer's safety, and whether the suspect resisted arrest. *See id.* at 1081.

 Applying this standard, the Court finds that a material fact dispute exists as to the objective reasonableness of defendant Whelan's actions. Defendant Whelan claims that plaintiff was physically compliant, and that he conducted a pat-down search of plaintiff without incident. However, plaintiff claims defendant Whelan threw her into his squad car. Plaintiff's arm was visibly swollen hours after her arrest when the paramedics visited her home, and she was diagnosed with a broken arm the following day. If plaintiff's version of the facts is believed, the jury could conclude without expert testimony that defendant Whelan used excessive force, and that his actions caused plaintiff's broken arm. Plaintiff has accordingly presented sufficient evidence to withstand defendant Whe-

lan's motion for summary judgment based on a qualified immunity defense.

### C. Unlawful Jailing

Lastly, plaintiff claims defendant Whelan violated § 1983 by sending her to the Hennepin County jail instead of ticketing her. Plaintiff moves for partial summary judgment on this claim against defendant Whelan. Plaintiff contends that no reasonable jury could find that it was lawful for defendant Whelan to jail her. Defendant Whelan argues plaintiff's claim fails because she does not allege a violation of a federal right and because plaintiff has not raised a genuine issue of material fact as to the objective reasonableness of his actions. The Court agrees and grants defendant Whelan's motion for summary judgment.

 Section 1983 is not itself a source of substantive rights. *Bahr v. County of Martin,* 771 F.Supp. 970, 974 (D.Minn.1991). The statute is a vehicle for asserting federal rights conferred elsewhere. *Id.* Thus, a plaintiff asserting claims under § 1983 must identify a specific constitutional right allegedly deprived under color of state law. *Id.* at 975.

 The standards for arrest and detention are derived from the Fourth Amendment. *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *see also Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person"). It does not violate the Fourth Amendment to detain an arrestee while officers carry out the administrative steps incident to arrest. *See Gerstein,* 420 U.S. at 114, 95 S.Ct. 854 ("[A] policeman's on-the-job assessment of probable cause provides legal justification for arresting a person ..., and for a brief period of detention to take the administrative steps incident to arrest."); *Hood v. City of Chicago,* 927 F.2d 312 (7th Cir.1991) (affirming dismissal of complaint alleging that detention of arrestee for fingerprinting following misdemeanor arrest violated § 1983).

Plaintiff is not challenging the length of her detention, nor has she presented any evidence that the Hennepin County jail took longer than needed to process her arrest. Rather, plaintiff argues that it was unlawful for defendant Whelan to decide to send her to jail at all, given that he had the option of issuing a citation at the scene and releasing her. Essentially, plaintiff claims that the Fourth Amendment prohibits the detention of a person arrested for a misdemeanor. Plaintiff does not cite any federal authority to support this proposition. Instead, plaintiff relies on Minn. R.Crim. P. 6.01, which requires an arresting officer to "issue citations to persons subject to lawful arrest for misdemeanors, unless it reasonably appears to the officer that arrest or detention is necessary to prevent bodily harm to the accused or another or further criminal conduct." Minn. R.Crim. P. 6.01.

 The Court holds that defendant Whelan is entitled to qualified immunity for his decision to jail plaintiff. The procedure described in Minn. R. Civ. P. 6.01 is not a federal right actionable under § 1983. Thus, even if defendant Whelan violated Rule 6.01,[5] the violation would not support a § 1983 claim. Moreover, the Court is not convinced that the fact of detention incident to a misdemeanor arrest violates the Fourth Amendment. Under *Gerstein,* a detention incident to arrest is valid for so long as necessary to accomplish the administrative steps incident to arrest. 420 U.S. at 114, 95 S.Ct. 854. For these reasons, plaintiff has not established that defendant Whelan violated a clearly established federal right.

Plaintiff's unlawful jailing theory also fails because plaintiff has not raised a genuine issue of material fact concerning the objective reasonableness of defendant Whelan's actions. It is undisputed that plaintiff had been drinking at the time of her arrest, and that she intended to drive. The Court finds that a reasonable officer could have believed it was necessary to jail plaintiff to prevent

her from driving her car under the influence of alcohol.

For these reasons, defendant Whelan is entitled to qualified immunity for his decision to send plaintiff to the jail to process her arrest. The Court grants defendant Whelan's motion for summary judgment on plaintiff's unlawful jailing claim and denies plaintiff's cross motion for summary judgment on that theory.

## IV. Minnesota Common Law Claims

Plaintiff also asserts state tort claims against both defendants. Plaintiff contends defendant Whelan is liable for assault, battery, and false imprisonment.[6] Plaintiff alleges both defendants are liable for intentional infliction of emotional distress.

Defendants move for summary judgment on all the state law claims. Defendant Whelan contends that the doctrine of official immunity shields him from liability. As to plaintiff's intentional infliction of emotional distress claim, both defendants argue that the conduct plaintiff describes does not rise to the level of "extreme and outrageous" conduct, and that plaintiff cannot show she suffered severe emotional distress.

The Court denies defendant Whelan's motion for summary judgment as to the assault, battery, and false imprisonment claims. The Court grants summary judgment for both defendants on plaintiff's claim for intentional infliction of emotional distress.

### A. Official Immunity

 Defendant Whelan argues that plaintiff's common law claims are barred by the doctrine of official immunity. Under Minnesota law, public officials are automatically entitled to official immunity from state law claims when their duties require the exercise of discretion. *See, e.g., Johnson v. Morris,* 453 N.W.2d 31, 41–42 (Minn.1990). Police officers generally are classified as dis-

---

5. It is not necessary to determine whether defendant Whelan complied with Minn. R.Crim. P. 6.01 to decide the pending motions. Consequently, the Court does not resolve that issue.

6. Plaintiff's complaint also includes a state law claim entitled "excessive force." To the extent

that plaintiff purports to assert an independent cause of action under state tort law for "excessive force," the Court grants defendants' motion for summary judgment. Minnesota does not recognize "excessive force" as a cause of action apart from assault and battery.

cretionary officers entitled to immunity. *See, e.g., id.* at 42; *Elwood v. Rice County,* 423 N.W.2d 671, 679 (Minn.1988). An exception to the immunity doctrine exists, however, if the officer(s) acted "maliciously or willfully." *Johnson,* 453 N.W.2d at 42. To establish that an officer's conduct is malicious or willful, plaintiff must present specific facts that the officer intentionally committed wrongful acts without legal justification or willfully violated a known right. *See, e.g., Rico v. Minnesota,* 472 N.W.2d 100, 107 (Minn.1991). "Whether or not an officer acted maliciously or willfully is usually a question of fact to be resolved by the jury." *Johnson,* 453 N.W.2d at 42.

### B. Assault and Battery

 Plaintiff alleges defendant Whelan assaulted and battered her when he threw her against his squad car. An assault is a threat to do bodily harm to another with the present ability to carry out the threat. *Dahlin v. Fraser,* 206 Minn. 476, 288 N.W. 851 (Minn.1939). A battery is an intentional, unpermitted, offensive contact with another. *See, e.g., Paradise v. City of Minneapolis,* 297 N.W.2d 152, 155 (Minn.1980). Police officers may come into contact with individuals for legitimate purposes; thus, the use of force by an officer must be excessive to constitute battery. *See, e.g., Johnson v. Peterson,* 358 N.W.2d 484, 485 (Minn.Ct.App. 1984).

 The Court finds plaintiff has presented a genuine dispute of material fact sufficient to preclude summary judgment on the basis of official immunity on these state tort claims. As set forth above, there is a fact dispute regarding whether defendant Whelan used excessive force during the patdown search of plaintiff. The same dispute is enough to overcome an official immunity defense on plaintiff's assault and battery claims. *See, e.g., Elwood,* 423 N.W.2d at 679 (Minn.1988) ("The doctrine [of official immunity] protects honest law enforcement efforts, and is not intended to shield police brutality."); *see also Rico,* 472 N.W.2d at 107 (stating official immunity does not apply where an official "intentionally commits an act that he or she then has reason to believe is prohibited"). For these reasons, the Court denies defendant Whelan's motion for summary judgment on these claims.

### C. False Imprisonment

 Plaintiff contends defendant Whelan falsely imprisoned her. The tort of false imprisonment is similar to the tort of false arrest under Minnesota law. Both torts require an unlawful arrest performed by the defendant. *Guite v. Wright,* 976 F.Supp. 866, 871 (D.Minn.1997) (*citing Perkins v. St. Louis County,* 397 N.W.2d 405, 408 (Minn.Ct. App.1986)). An arrest is unlawful if the arresting officer did not have arguable probable cause to make the arrest. *Lundeen v. Renteria,* 302 Minn. 142, 224 N.W.2d 132, 136 (Minn.1974). An arrest made without proper legal authority is a false arrest, and any subsequent restraint is false imprisonment. *Guite,* 976 F.Supp. at 871.

 Where a genuine fact dispute prevents summary judgment on a § 1983 claim based on the lack of probable cause for arrest, the same fact dispute makes summary judgment inappropriate on a state law claim for false imprisonment. *Bahr v. County of Martin,* 771 F.Supp. 970, 979 (D.Minn.1991). Because, as discussed previously, a material fact dispute exists concerning the existence of probable cause to arrest plaintiff, summary judgment on defendant Whelan's claim of official immunity must be denied.

### D. Intentional Infliction of Emotional Distress

Defendants move for summary judgment on plaintiff's intentional infliction of emotional distress claim on two grounds: 1) the conduct plaintiff claims occurred is not "extreme and outrageous;" and 2) plaintiff's broken arm is insufficient to show that plaintiff suffered severe emotional distress.

 To succeed on a claim for intentional infliction of emotional distress, a plaintiff must establish that the defendant engaged in conduct that is extreme and outrageous, that the conduct was intentional or reckless, and that the conduct caused severe emotional distress. *K.A.C. v. Benson,* 527 N.W.2d 553, 560 (Minn.1995). The tort of intentional infliction of emotional distress is

"sharply limited" to cases involving particularly outrageous facts. *Odegard v. Finne,* 500 N.W.2d 140, 144 (Minn.Ct.App.1993). The conduct giving rise to distress must be "so atrocious that it passes boundaries of decency and is utterly intolerable to the civilized community." *Id.*

 The Court grants defendants' motion for summary judgment on plaintiff's claim for intentional infliction of emotional distress. First, the Court agrees with defendants that the conduct plaintiff alleges does not rise to the level of "extreme and outrageous" conduct.

Second, the Court finds that plaintiff has not presented evidence that she suffered severe emotional distress as a result of the events on May 5, 1996. Severe emotional distress is emotional distress that no reasonable person could be expected to endure. *Johnson v. Morris,* 453 N.W.2d 31, 41 (Minn. 1990) (*citing Hubbard v. United Press Int'l, Inc.,* 330 N.W.2d 428, 436 (Minn.1983)). Plaintiff contends that her broken arm is sufficient to show that she suffered severe emotional distress. The Court disagrees. The fact that plaintiff broke her arm does not mean that plaintiff suffered emotional distress, let alone severe emotional distress. *Cf. Hubbard,* 330 N.W.2d at 440 (holding that evidence of depression, vomiting, stomach disorders, skin rash and high blood pressure was insufficient to show severe emotional distress); *Odegard,* 500 N.W.2d at 144 (finding depression, impairment of ability to trust, and damaged relationship with children insufficient to show severe emotional distress); *Born v. Medico Life Ins. Co.,* 428 N.W.2d 585, 590 (Minn.Ct.App.1988) (reversing jury award where plaintiff did not present medical testimony to substantiate physical manifestations of distress).

For these reasons, the Court grants defendants' motion for summary judgment on plaintiff's claim of intentional infliction of emotional distress.

### ORDER

Based on the foregoing, the submissions of the parties, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1. Defendants' motion for summary judgment [Docket No. 16] is **GRANTED IN PART** and **DENIED IN PART** as follows:

a. The City of Richfield's motion for summary judgment on plaintiff's § 1983 claims is **GRANTED.**

b. Defendant Whelan's motion for summary judgment on plaintiff's § 1983 claims is **GRANTED** for plaintiff's claim based on the alleged unlawfulness of her jailing, and **DENIED** as to plaintiff's allegations of unlawful arrest and use of excessive force.

c. Defendants' motion for summary judgment on plaintiff's claim for intentional infliction of emotional distress is **GRANTED.**

d. Defendant Whelan's motion for summary judgment on plaintiff's claims for assault, battery and false imprisonment is **DENIED.**

2. Plaintiff's motion for partial summary judgment [Docket No. 19] is **DENIED.**